# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49561

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: July 12, 2023 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| ADAM ZAMUDIO, JR., | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas W. Whitney, District Judge.

Order denying motion to suppress and judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kiley A. Heffner, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Adam Zamudio, Jr. appeals his conviction for felony possession of a controlled substance, Idaho Code § 37-2732(c)(1). Zamudio argues the district court erred in denying his motion to suppress evidence obtained during an unlawful seizure, thus violating his constitutional rights provided by the Fourth Amendment to the United States Constitution and Article I § 17 of the Idaho State Constitution. A defendant is not unlawfully seized during a consensual encounter with a police officer. Furthermore, law enforcement may conduct a brief investigatory stop when it has reasonable, articulable suspicion based on facts and rational inferences from those facts that the detained is, has been, or is about to, engage in criminal activity. The district court did not err when it denied Zamudio's motion to suppress because the officer had reasonable, articulable suspicion that Zamudio had been, was, or was about to be, engaged in criminal activity and, thus, the

1

subsequent investigatory detention was constitutionally permissible. The order denying Zamudio's motion to suppress and his judgment of conviction are affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Nampa Police Department received a call on February 10, 2021, at approximately 4:27 a.m. regarding a suspicious person in a high-crime, residential neighborhood. The caller informed dispatch that a Hispanic male wearing a tan Carhartt-style jacket and a backpack was walking in circles, looking into the caller's front yard hedges, and said that he was looking for something, despite not having a light.

A police officer arrived at the caller's home approximately five minutes after being dispatched. The officer located a person closely matching the description of the suspicious person, later identified as Zamudio, approximately four blocks away from the caller's home. The person had the same physical characteristics and was wearing a gray Carhartt-style jacket and a backpack. The police officer did not observe any other person in the area between the caller's home and where he encountered Zamudio.

After seeing Zamudio, the police officer parked his patrol vehicle approximately ten feet from Zamudio without activating the vehicle's overhead lights or siren. The uniformed officer got out of the patrol vehicle and asked Zamudio if he was willing to speak with him; Zamudio agreed and walked toward the officer to begin the conversation. When the officer asked for Zamudio's identification, he verbally provided his name and date of birth and indicated that he did not carry a physical copy of his identification.

Almost simultaneous to Zamudio providing his information to the first officer, a second uniformed officer arrived at the scene, parked her patrol car behind Zamudio, got out of her vehicle, walked toward Zamudio, and stopped approximately ten feet behind him. The first officer relayed Zamudio's information to dispatch to conduct a records check and to verify the information provided by Zamudio. While waiting for confirmation from dispatch, the first officer asked Zamudio for consent to search him and his backpack. Zamudio consented to the search of his person but refused consent to search his backpack. As the first officer began to pat down Zamudio, dispatch informed both officers that Zamudio had an active, outstanding arrest warrant. Approximately sixty seconds elapsed between the time the second officer took position behind Zamudio and when law enforcement learned of the warrant. Upon confirming the warrant, the

2

first officer continued to pat down Zamudio and then placed him under arrest pursuant to the arrest warrant. The second officer then searched Zamudio's backpack, locating a syringe containing a clear liquid that tested presumptively positive for methamphetamine. Zamudio was charged with possession of a controlled substance, possession of drug paraphernalia, and a persistent violator enhancement.

Zamudio moved to suppress the evidence obtained during his encounter with law enforcement, including his personal information and the evidence discovered during the search of his backpack, arguing the seizure was unlawful because the officers lacked a valid warrant to stop Zamudio and did not have a reasonable suspicion that Zamudio was engaged in criminal behavior. The district court denied Zamudio's motion to suppress, finding the initial encounter between the officer and Zamudio was consensual and, thereafter, officers had reasonable suspicion of criminal activity that justified Zamudio's brief, investigatory detention. The district court further concluded that once the officers confirmed the outstanding warrant, Zamudio was lawfully arrested and his backpack was lawfully searched, thus, there was no basis on which to grant Zamudio's suppression motion.

Thereafter, Zamudio entered a conditional guilty plea to possession of a controlled substance and the remaining charges were dismissed. Zamudio appeals from his judgment of conviction, asserting the district court erred in denying his motion to suppress.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

**III.**

**ANALYSIS**

At issue in this case is whether the officers had a reasonable, articulable suspicion to detain Zamudio for approximately sixty seconds after Zamudio provided his personal information to the officer but before dispatch confirmed Zamudio's active warrant. On appeal, the parties do not challenge the district court's finding that Zamudio's initial engagement with the first officer was consensual or that, during that consensual encounter, Zamudio provided his personal information. However, Zamudio argues the officers unlawfully seized him prior to dispatch confirming he had an active arrest warrant because the officer lacked specific, articulable facts to support reasonable suspicion that Zamudio had been, was, or was about to be, engaged in criminal activity. Zamudio further argues the evidence discovered from the unlawful seizure should be suppressed pursuant to the exclusionary rule. In response, the State argues the brief investigatory detention did not violate Zamudio's constitutional rights because the officers were aware of specific, articulable facts sufficient to establish a reasonable suspicion that Zamudio had been, was, or was about to be, engaged in criminal activity.

**A.      The District Court Did Not Err in Finding There Was a Reasonable Suspicion for the Investigatory Detention**

The Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho State Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and applies to the states through the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. IV; *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009).[1]

The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v.*

---

[1]      Although Zamudio contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Zamudio's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

*Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). A limited investigative detention is permissible if it is based upon an officer's reasonable articulable suspicion that the detained person is, has been, or was about to be engaged in criminal activity. *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. An officer's "[r]easonable suspicion must be based on specific, articulable facts and the rational inference that can be drawn from those facts." *Id.*; *see also State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). The quantity and quality of necessary information to establish reasonable suspicion is greater than a mere hunch or "inchoate and unparticularized suspicion" but less than what is necessary to establish probable cause. *Alabama v. White*, 496 U.S. 325, 330 (1990) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. Whether the officer possessed enough necessary information to establish reasonable suspicion is evaluated on the totality of the circumstances at or before the time of the stop. *Bishop*, 146 Idaho at 811, 203 P.3d at 1210.

A report received from an individual regarding suspected criminal activity may establish reasonable suspicion when it would warrant a man of reasonable caution in the belief that a stop was appropriate. *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. A report received from a known citizen is generally sufficient to establish reasonable suspicion because the citizen's reputation can be assessed and may be subjected to criminal liability if the provided information is untruthful. *Id.* at 812, 203 P.3d at 1211. Even though reports provided by known citizens are presumed reliable, the report's content and the citizen's basis of knowledge are examined under the totality of the circumstances to determine whether the report gives rise to reasonable suspicion. *Id.*

The district court denied Zamudio's motion to suppress after first making factual findings regarding the content of the citizen's report. The information provided by the citizen included: (1) the citizen's identity (or that identity was readily ascertainable as the citizen provided their address); (2) the basis of their knowledge, which was a first-hand observation of Zamudio searching through the citizen's bushes, claiming he was looking for something in the bushes although he did not have a light to assist in his search; (3) the citizen watched Zamudio walk toward a neighbor's house and then walk in circles in the street; and (4) a physical description of Zamudio and his attire. The district court also found: (1) the events occurred during the dark, pre-dawn hours on a winter day; (2) the neighborhood was a high-crime residential area; (3) the officer responded within five minutes and found Zamudio four blocks from the citizen's home;

5

(4) Zamudio matched the physical description of the suspect, as did his attire; (5) Zamudio provided his name and birthdate during a consensual encounter with the officer; (6) Zamudio was seized for "approximately sixty seconds" beginning when the second officer positioned herself behind Zamudio and ending when Zamudio's outstanding arrest warrant information was conveyed to the officers; and (7) during that sixty seconds, the officer was undertaking reasonable inquiries to confirm or dispel his suspicion of criminal activity. Based on these facts, the district court concluded that the officer's suspicion was reasonable based on the information contained in the report and the circumstances existing at the time the officer arrived at the scene. Thereafter, Zamudio was lawfully arrested pursuant to an outstanding arrest warrant; and his backpack was lawfully searched incident to the arrest which resulted in the discovery of a controlled substance.

Zamudio does not challenge the content or reliability of the report but argues that the report was too vague to provide reasonable suspicion of criminal activity. We disagree. The information reported was sufficiently specific and some of the information was confirmed or corroborated within five minutes of the call when the first officer arrived at the location. For example, Zamudio was the only person the officer encountered en route to the address, Zamudio matched the physical description of the suspicious person, and he had a similar Carhartt-style jacket and a backpack.

The district court's factual findings, which are unchallenged on appeal, provide objective and articulable facts supporting the officer's reasonable suspicion of criminal activity. When determining whether the officer had reasonable suspicion of criminal activity, this Court considers the totality of the circumstances rather than viewing individual facts in isolation. *State v. Kelley*, 159 Idaho 417, 424, 361 P.3d 1280, 1287 (Ct. App. 2015). Although Zamudio argues the officer did not have specific, articulable facts to suspect Zamudio of trespass, the officer need not have a reasonable suspicion of a specific crime; instead, there need only be objective and specific facts giving rise to a reasonable belief the individual had been, is, or is about to be, engaged in some criminal activity. *State v. Perez-Jungo*, 156 Idaho 609, 615, 329 P.3d 391, 397 (Ct. App. 2014). As listed above, the officer had specific, articulable facts suspecting Zamudio of criminal activity.

The totality of circumstances in this case supports the district court's conclusion that not only was the detention justified at its inception, but thereafter, the detention was related in scope to the circumstances which justified the initial detention. By the time Zamudio was detained, he had already provided his personal identifying information to the officer, who called it in to dispatch. During the next sixty seconds, the officer was talking with Zamudio to confirm or dispel

6

the officer's suspicion that Zamudio was the subject of the citizen's call and the extent, if any, of criminal activity. This was constitutionally permissible. During this time, the officer received confirmation of an outstanding warrant for Zamudio, which provided the legal basis for Zamudio's subsequent arrest and the search of his backpack. Thus, because the officer had reasonable suspicion to detain Zamudio, the district court did not err in denying Zamudio's motion to suppress.

## IV.

## CONCLUSION

The officer possessed specific, articulable facts providing reasonable suspicion of criminal activity to justify Zamudio's detention to confirm or dispel that suspicion. Zamudio's subsequent arrest and search of his backpack did not violate the Fourth Amendment to the United States Constitution. The district court did not err in denying Zamudio's motion to suppress, and the judgment of conviction is affirmed.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.